UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEX TOMEK,<br><br>    Plaintiff,<br><br>  v.<br><br>APPLE, INC.,<br><br>    Defendant. | No. 2:11-cv-02700-MCE-DAD<br><br>**MEMORANDUM AND ORDER** |

Plaintiff Alex Tomek ("Plaintiff") initiated this action against Defendant Apple, Inc. ("Defendant") seeking damages and injunctive relief for state law violations arising out of Defendant's alleged misrepresentation, fraud, and concealment. Presently before the Court is Defendant's Motion to Dismiss Plaintiff's Third Amended Complaint. (ECF No. 50.) For the following reasons, Defendant's Motion is GRANTED WITHOUT LEAVE TO AMEND.[1]

///

///

///

///

---

[1] Because oral argument would not be of material assistance, the Court ordered this matter submitted on the briefing. E.D. Cal. R. 230(g).

# BACKGROUND[2]

Plaintiff alleges that on February 15, 2011, Defendant unveiled the 2011 MacBook Pro ("MacBook"), a computer Defendant purportedly touted as generating "huge leaps in performance." According to Plaintiff, Defendant promised, among other things, that:

> [The MacBook] is up to two (2) times faster than its predecessor with stunning graphics.
>
> They perform up to twice as fast as the previous generation, breezing through demanding tasks like editing HD video.
>
> Say you're using a processor-intensive application like Aperture 3 or Final Cut Pro that benefits from extra power. Turbo Boost . . . automatically increases the speed of the active cores – up to 3.4 GHz . . . allow[ing] the processor to manage performance without sacrificing efficiency. All this takes place behind the scenes, so your work just goes smoother and faster.
>
> [E]ven with faster processors and graphics, the new MacBook pro lasts an amazing 7 hours on a single charge.

(TAC ¶¶ 6, 9.)  The above statements are accompanied by caveats, however, that "MacBook Pro continuously monitors system thermal and power conditions, and may adjust processor speed as needed to maintain optimal system operation" and "[b]attery life and charge cycles vary by use and settings." (Declaration of Alexei Klestoff in Support of Apple's Motion to Dismiss Plaintiff's First Amended Complaint ("Klestoff Decl."), ECF No. 29-3 ¶¶ 2-3 & Exs. A, B.)[3]

---

[2] Unless otherwise noted, the following facts are derived, at times verbatim, from Plaintiff's Third Amended Complaint ("TAC"), filed on February 19, 2013. (ECF No. 47.)

[3] These additional statements, although not alleged in the TAC itself, are the proper subject of judicial notice. See Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994), overruled on other grounds by 307 F.3d 1119, 1121 (9th Cir. 2002) ("Documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss."). By its July 11, 2012 Order, the Court granted Defendant's request for judicial notice with respect to Apple's web-page and Apple's press release regarding the MacBook Pro, both of which were cited in Plaintiff's First Amended Complaint ("FAC"). (See ECF No. 35, at 2 n.3.) Plaintiff again cites these documents in the TAC, thus making them a proper subject to judicial notice. (See, e.g., TAC ¶¶ 6, 8, 9, 25.)

In addition, Plaintiff alleges Defendant promised processor speeds for "the 15-inch models [of] 2.0 or 2.2 GHz or 2.3 GHz (optional) and [for] the 17-inch as 2.2 GHz with optional 2.3 GHz available."  (TAC ¶ 10(b).)

Plaintiff purchased a MacBook on February 28, 2011.  After the purchase, Plaintiff found that his Macbook's battery was not charging under certain conditions, such as when the computer was fully utilizing processors meant for streaming movies, playing video games, or editing video.  More specifically, Plaintiff discovered, and reported to Defendant in July of 2011, that his battery was draining power even when the machine was plugged into an external power source via the AC adapter.  Defendant's support representative told Plaintiff the battery drain was "expected behavior."  (TAC ¶ 10(d).)

Plaintiff further contends that, in approximately August of 2011, his power adapter failed to supply sufficient power to the MacBook, allowing the battery to drain to zero and shutting the computer down.  Plaintiff then had to spend twenty minutes recharging his battery before re-copying media for a video editing project.  Plaintiff believes other consumers may have experienced a similar situation where their MacBooks stopped functioning properly, or at all, and that the machines' battery cycle counts may increase under certain conditions.

Consequently, on September 9, 2011, Plaintiff initiated this action against Defendant in state court.  (ECF No. 3.)  Defendant subsequently removed the case to this Court.  (ECF No. 1.)  On March 26, 2012, Defendant filed a Motion to Dismiss Plaintiff's First Amended Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6),[4] which the Court granted with leave to amend.  (ECF Nos. 29 & 35.)  On July 31, 2012, Plaintiff filed his Second Amended Complaint ("SAC").  (ECF No. 36.)  On August 31, 2012, Defendant moved to dismiss Plaintiff's Second Amended Complaint for failure to state a claim under Rule 12(b)(6), which the Court again granted with leave to amend.  (ECF Nos. 39 & 46.)

---

[4] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

On February 19, 2013, Plaintiff filed the operative Third Amended Complaint.  (ECF No. 47.)  On March 22, 2013, Defendant again moved to dismiss Plaintiff's Third Amended Complaint for failure to state a claim under Rule 129(b)(6).  (ECF No. 50.)  Plaintiff filed his opposition on April 19, 2013,[5] and Defendant filed a reply to the opposition on May 2, 2013.  (ECF Nos. 51 & 55.)

## STANDARD

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party.  Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336,337-38 (9th Cir. 1996).  Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations.  However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Id. (internal citations and quotations omitted).  A court is not required to accept as true a "legal conclusion couched as a factual allegation."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009) (quoting Twombly, 550 U.S. at 555).  "Factual allegations must be enough to raise a right to relief above the speculative level."

---

[5] On April 19, 2013, Plaintiff's counsel also filed a Declaration containing an alleged "firmware update" for MacBooks as Exhibit A.  (Declaration of Jack Humes, ECF No. 52.)  According to Plaintiff's counsel, the "firmware update" addresses McaBooks' malfunction and design defect issues which are the subject of this lawsuit.  (ECF No. 52 ¶ 2.)  However, the "firmware update" is neither alleged nor relied upon in the TAC, and Plaintiff has not requested judicial notice of this document.  Accordingly, the Court declines to consider the "firmware update".  See Swartz v. KPMGLLP, 476 F.3d 756, 763 (9th Cir. 2007) ("In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice.").

Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the pleading must contain something more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action.")).

Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket assertion, of entitlement to relief." Twombly, 550 U.S. at 556 n.3 (internal citations and quotations omitted). Thus, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." Id. (citing 5 Charles Alan Wright & Arthur R. Miller, supra, at § 1202). A pleading must contain "only enough facts to state a claim to relief that is plausible on its face." Id. at 570. If the "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. However, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

Under Rule 9(b), however, a party alleging fraud or intentional misrepresentation must satisfy a heightened pleading standard by stating with particularity the circumstances constituting fraud. Fed. R. Civ. P. 9(b). Specifically, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997)). Further, "a plaintiff must set forth more than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false." Id. (quoting Decker v. GlenFed, Inc., 42 F.3d 1541, 1548 (9th Cir. 1994).

A court granting a motion to dismiss a complaint must then decide whether to grant leave to amend.

///

1  Leave to amend should be "freely given" where there is no "undue delay, bad faith or
2  dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by
3  virtue of allowance of the amendment, [or] futility of the amendment . . . ." Foman v.
4  Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048,
5  1052 (9th Cir. 2003) (listing the Foman factors as those to be considered when deciding
6  whether to grant leave to amend).  Not all of these factors merit equal weight.  Rather,
7  "the consideration of prejudice to the opposing party . . . carries the greatest weight." Id.
8  (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 185 (9th Cir. 1987).  Dismissal
9  without leave to amend is proper only if it is clear that "the complaint could not be saved
10 by any amendment." Intri-Plex Techs. v. Crest Group, Inc., 499 F.3d 1048, 1056 (9th
11 Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d 1006, 1013 (9th Cir. 2005); Ascon
12 Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989) ("Leave need not be
13 granted where the amendment of the complaint . . . constitutes an exercise in
14 futility . . . .")).

## ANALYSIS[6]

In his TAC, Plaintiff asserts the following claims for relief: (1) intentional misrepresentation; (2) fraud and concealment; (3) unfair business practices in violation of California's Unfair Competition Law ("UCL"), Bus. & Prof. Code § 17200; and (4) violation of California's Consumer Legal Remedies Act ("CLRA").  Defendant moves to dismiss all four of Plaintiff's causes of action on the basis that Plaintiff has failed to adequately plead actionable misrepresentations or omissions.  These fraud-based claims are subject to review pursuant to Rule 9(b)'s heightened pleading standard.

///
///

---

[6] Since Plaintiff has not made any substantive changes to his factual and legal allegations, the analysis in this Order is almost identical to the analysis in the Court's January 30, 2013 Order dismissing Plaintiff's SAC.  (See ECF No. 46.)

See Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."); Kearns v. Ford Motor Co., 567 F.3d 1120, 1124-25 (9th Cir. 2009) (applying Rule 9(b) to the California's UCL and CLRA claims predicated on alleged misrepresentations). Especially given this heightened standard of review, all four of Plaintiff's claims fail.

### A. Plaintiff's Common Law Claims

Defendant first moves to dismiss Plaintiff's common law claims for intentional misrepresentation and fraud and concealment. "To state a claim for fraud or intentional misrepresentation under California law, a Plaintiff must allege: (1) misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage." Baltazar v. Apple, Inc., No. CV-10-3231-JF, 2011 WL 588209, at *3 (N.D. Cal. Feb. 10, 2011) ("Baltazar I"). Similarly, to state an actionable omission or concealment claim, Plaintiff "must allege specifically a representation actually made by the defendant that is contrary to the omission, or an omission of a fact that the defendant was obliged to disclose." Baltazar v. Apple, Inc., No. CV-10-3231-JF, 2011 WL 3795013, at *5 (N.D. Cal. Aug. 26, 2011) ("Baltazar II") (citing Daughtery v. Am. Honda Motor Co., 144 Cal. App. 4th 824, 835 (Ct. App. 2006)).

Plaintiff's fraud-based claims continue to rest on allegations that Defendant misrepresented or concealed that the MacBook's battery drains under certain conditions, and that the MacBook doesn't run at certain minimum operating speeds, as Defendant allegedly promised. While the TAC rewords and repeats these allegations from the SAC and the FAC, it, once again, does nothing to add to them.

First, the TAC lacks any facts demonstrating the Defendant ever represented to Plaintiff that the MacBook's battery would not drain under certain circumstances, even if plugged into an external power source, resulting in a shutdown.

7

In fact, Defendant's support representative even told Plaintiff the battery drain was "expected behavior." (TAC ¶ 10(d).) The TAC again does not put forth a representation by Defendant to the contrary. In the same vein, the TAC does not contain any facts demonstrating that Plaintiff's computer could not perform up to its technical specifications regarding processor speeds. Even assuming the MacBook shuts down under the unique circumstances Plaintiff alleges, the TAC does not allege Plaintiff's computer did not perform at the speeds Defendant had allegedly promised.[7] Accordingly, the TAC identifies no representation from Defendant that the shutdown would never happen and contains no allegations that Plaintiff's computer could not work as fast as promised. As such, the TAC, for the third time, lacks any affirmative representations by Defendant that Plaintiff can plausibly claim to be false.

       Moreover, Defendant's battery and process-related performance promises were accompanied by the qualifier "up to," (see, e.g., TAC ¶¶ 4(d), 6, 8, 10, 25), and the caveats "MacBook Pro . . . may adjust processor speed as needed to maintain optimal system operation" and "[b]attery life and charge cycles vary by use and settings," (see Klestoff Decl. ¶¶ 2-3, Exs. A, B). As the Ninth Circuit explained and this Court noted in the previous two Orders, a "reasonable consumer would not have been deceived by statements, which included the qualifier 'up to' (meaning the same or less than) and an explanation that each consumer's maximum speed would vary depending on several . . . factors." Maloney v. Verizon Internet Servs., Inc., 413 F. App'x 997, 999 (9th Cir. 2011). Thus, given Defendant's disclaimers and caveats, Plaintiff has failed to demonstrate that his reliance on any alleged battery or processor-related performance representation was justifiable.

///

///

---

[7] The TAC alleges, inter alia, that Defendant represented the MacBook features "[an] available 2.3 GHz processor – with Turbo Boost speeds up to 3.4 GHz . . . [that] enables these MacBooks Pro models to run applications up to twice as fast of their top-of-the-line predecessors." (TAC ¶ 6.) The TAC further alleges the Defendant represented "you can expect to surf the web wirelessly for up to 7 hours on a single charge." (TAC ¶ 8.)

Further, as the Court stated in its previous two Orders, Defendant's remaining representations regarding the MacBook's performance amount to nothing more than puffery and thus are not actionable as fraud or intentional misrepresentation. (See ECF No. 35, at 10-11; ECF No. 46, at 8-9.) In particular, in support of his common law causes of action, Plaintiff relies on Defendant's statements characterizing the MacBook as a "huge leap[ ] in performance" that makes it "so your work just goes smoother and faster," and "[e]verything you do on your MacBook Pro happens with dramatic speed and incredible overall performance." (TAC ¶¶ 5, 6, 8.) Such "[g]eneralized, vague, and unspecified assertions constitute 'mere puffery' upon which a reasonable consumer could not rely . . . ." Anunziato v. eMachines, Inc., 402 F. Supp. 2d 1133, 1139 (C.D. Cal. 2005) (citing Glen Holly Entertainment, Inc. v. Tektronix Inc., 343 F.3d 1000, 1005 (9th Cir. 2003)). Accordingly, Plaintiff's fraud and intentional misrepresentation claims, as pled, do not state a plausible claim for relief because the TAC fails to allege that Defendant ever promised the MacBook would operate other than it did.

Finally, Plaintiff's concealment claim once again fails to demonstrate that Defendant had a duty to disclose the alleged shutdown issue or that Defendant actually concealed the purported defect from Plaintiff at the time of purchase. See Baltazar II, 2011 WL 3795013, at *5 (no claim for fraudulent omission when Defendant's advertisements depicted iPad being used outdoors but the product allegedly would not function without interruption under all external conditions); Hovsepian v. Apple, Inc., No. 08-5788 JF (PVT), 2009 WL 5069144, at *3 (N.D. Cal. Dec. 17, 2009) (general allegations regarding concealment insufficient). As analyzed above, Defendant never represented that the MacBook would always run at the represented speeds, or that the computer would achieve several hours of battery life under all uses and operating conditions. To the contrary, Defendant disclosed to Plaintiff that the MacBook "may adjust processor speed as needed to maintain optimal system operation" and "[b]attery life and charge cycles vary by use and settings." (Klestoff Decl., Exs. A, B.) Accordingly, Plaintiff's concealment claim fails.

9

For the reasons stated above, Defendant's Motion to Dismiss Plaintiff's misrepresentation and fraud and concealment claims is GRANTED. Because Plaintiff has failed to cure the deficiencies of his common law claims after being given two opportunities to do so, the Court finds that any further leave to amend would be futile and dismisses Plaintiff's claims for intentional misrepresentation, fraud and concealment without leave to amend.

### B.   Plaintiff's Statutory Claims

As the Court explained in its previous two Orders, Plaintiff's statutory claims under California's UCL and CLRA are wholly dependent on the viability of his misrepresentation and concealment claims. (See ECF No. 35 at 12; ECF No. 46 at 10-11.) Because Plaintiff once again fails to plead any actionable misrepresentation or omission, his statutory claims fail for the same reasons as did his common law claims.

California's UCL makes actionable "any lawful, unfair or fraudulent business act." Cal. Bus. & Prof. Code § 17200. "An act can be alleged to violate any or all of the three prongs of the UCL – unlawful, unfair, or fraudulent." Berryman v. Merit Prop. Mgmt., Inc., 152 Cal. App. 4th 1544, 1554 (Ct. App. 2007). Claims arising out of the unlawful prong "borrow[ ] violations of other laws and treat[ ] them as unlawful practices that the unfair competition law makes independently actionable." Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co., 20 Cal. 4th 163, 180 (1999). "A UCL claim predicated on unfair business practices may be grounded upon a violation of a statute or be a standalone claim based on an alleged act that violates established public policy or if it is immoral, unethical, oppressive, or unscrupulous and causes injury to consumers which outweighs its benefits." Hovsepian, 2009 WL 5069144, at *4 (internal citations and quotation marks omitted). "A claim based upon the fraud prong may be brought based upon conduct akin to common-law fraud or an alleged course of conduct that is likely to deceive the public." Id.

For its part, the CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices." Cal. Civ. Code § 1770. "The CLRA proscribes both active misrepresentations about the standard, quality, or grade of goods, as well as active concealment related to the characteristics or quality of goods that are contrary to what has been represented about the goods." Morgan v. Harmonix Music Sys., Inc., No. C08-5211 BZ, 2009 WL 2031765, at *3 (N.D. Cal. July 7, 2009).

As analyzed above, Plaintiff has failed to plead the existence of any actionable misrepresentation or omission – let alone a violation of a law or other unfair or fraudulent practice – capable of supporting a cause of action under either the UCL or the CLRA. See, e.g., Baltazar I, 2011 WL 588209, at *4-5 (failure to adequately allege misrepresentation, omission, or other wrongdoing fatal to UCL and CLRA claims); Berenblat v. Apple, Inc., Nos. 08-4969 JF (PVT) & 09-1649 JF (PVT), 2009 WL 2591366, at *5 (N.D. Cal. Aug. 21, 2009) (failure to disclose defect in product that nonetheless performs as warranted during the warranty period does not provide basis for UCL violation). Accordingly, Defendant's Motion to Dismiss Plaintiff's UCL and CLRA statutory claims is GRANTED without leave to amend.

## CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss Plaintiff's Third Amended Complaint (ECF No. 50) is GRANTED WITHOUT LEAVE TO AMEND. The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated: July 23, 2013

_____
MORRISON C. ENGLAND, JR, CHIEF JUDGE
UNITED STATES DISTRICT COURT